Insurance Company, 22-20540. Yes. Thank you, and may it please the Honorable Court. Again, I'm Chris Baker. I'm here with my co-counsel, David Crutcher, who is an ERISA specialist. So if the Court has any specific questions about how ERISA           Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. might ask him to chime in. I was going to just blame him. Exactly. Thank you.   and Family Bankers. It passed a court opinion committee that what a termination penalty as a condition of releasing an RISA plan's assets to a sales provider. So the bot and재 is a news sales provider. I want to answer any questions the Court might have, but I want to focus specifically on two issues. The first is whether a plan's initial contract with a service provider is a prohibited transaction that must be reasonable under Section 408. And looking at this issue, this will be the first court of appeal to consider and harmonize how the 2021 amendments to Section 408 would impact the party in interest analysis. The second thing I want to discuss is the circumstances under which a service provider acts as a fiduciary when it refuses to waive or reduce a bounded or ranged fee. I want to emphasize this is not an issue. Whether or not there has been a breach is not at issue. The only issue here is whether or not Valak was a fiduciary. Another thing to note, this is not a situation where Valak sent a bill to the named fiduciary and left it to the fiduciary to decide whether or not to pay the bill. This is a case where the named fiduciary said, do not assess this penalty. And because Valak controlled the assets, it took the money anyways over the named fiduciary's objection. So it's different. All right. So first, let's talk about the prohibited transaction issue. And I want to directly confront the circularity problem that's floating out there among the various circuit courts. Here is an obvious example of a circularity problem. ERISA defines an employee as a person employed by an employer. That is a circularity problem because it begs the question of what it means to be employed. Here, there is no circularity problem. I appreciate that you have an argument, but I've just had this question that is kind of bothering me. It seems like you're saying that if they had put that in there and not said it could be waived, you couldn't attack it. So the fact that I say I'm going to charge you X, but I can waive it, as soon as I say that, okay, it's fraudulent, it's wrong, it's bad, but if I just say, you're getting charged that, have a nice day, that's okay. I don't understand why the waiver is a bad thing. I'll waive what you owe me. That's terrible. That's horrible. Why is that? I'm just confused. Well, it's not a bad thing, the unilateral waiver, and this goes to the fiduciary breach count. But here we have, you know, there are three things that are different in this situation. First, it's not a predetermined fee. It's a bounded fee in the plan. So it's a ranged fee, anywhere between 50 and 100%. Second, VALIC gets to control whether or not the fee is paid. It has control of the assets. And under Section 21.1, authority or control over disposition of the assets makes someone a fiduciary. And third, it expressly deliberated on whether or not it should pay the fee. It exercised discretion. And, again, Your Honor, the issue is not whether there has been a breach. We're not there yet. Right? And it might be we unilaterally waived the fee, we were acting as fiduciary when we waived the fee. It's fine. There's no breach. We were doing everything we could. You know, I was just addressing a very specific point, which is it seemed like you all were mainly feeling like the fact of a waiver is itself the problem. Because, I mean, there's no question they should be able to charge something for their work, whether they're a fiduciary or not. I mean, lawyers do contingency fees. That doesn't somehow make them unethical, I hope. But you all seem very focused on the waiver being a problem. And I'm trying to understand why it is a problem. The waiver, not anything else. I know you have a whole lot of other arguments. I'm not doubting that. Just focusing on that, trying to understand that argument. The waiver is not a problem. However, the waiver, outside of the contract or a reserved discretion to waive, all we're saying is that it turns Valak into a fiduciary. So, for example, let's take an example. If Valak had said, we will waive our fee for the person negotiating our contract, but not for anyone else, that would be a very problematic waiver, because it feels a little bit like a bribe. It's like, we're not going to waive. We will give you more money, who I'm negotiating my contract with, but I'm going to take money from all the other plan participants. That is a waiver that should raise everybody's eyebrows. But that's not what we're dealing with here. That is not what we are dealing with here. The question is, maybe I'm not being clear enough, it's really specific to your argument here in this case about this situation. That's what our appeal is about, this case. Absolutely. And what we are saying is that when the service provider controls the assets and gets to decide for itself whether or not to pay its own bill, that is a fiduciary act. That is all we are saying. Whether or not it's a breach is a different question. It might be totally fine. It might be it's not a breach at all. It's totally consistent with ERISA because everyone can't pay. So it would have been better for them not to have the waiver in there and just charge the 5%, call it a day. If VALIC did not want to reserve for itself the discretion on what the fee would be, between zero and 5%, it should have just charged 5%. That's right. Go ahead. I'm sorry. Did the waiver allow them to have more, to increase the amount that they would withhold? It did not. It's between zero and 5%. But what if it was between zero and 50%? Would that be okay? I mean, you're still going to be exercising discretion. Why would you all agree to it? I mean, this was a contract that was agreed to, right? It wasn't forced. Yes, it was. Okay. And contracts all the time have some goofy stuff in them, but we in America tend to support contracts as the notion that, you know, there's certainly exceptions to that all over the place. I'm well aware of that. But I'm just saying that you all agreed to that. Yes. Okay. We agreed that. And you're not saying you were forced into it or anything like that? Not at all. Okay. The Markhams agreed that VALIC would have the discretion to set the fee between zero and 5%. If it had said zero and 100%, you all might not have signed it, right? You know, it's a dentist. So that is the point. That's what contracts are all about. We agree. Yes. Even if maybe this wasn't the smartest thing for me to agree to. It was absolutely not the smartest thing for the Markhams to agree to. And as the fiduciary, they're trying to remedy the mistake they made, which was agreeing to this contract. And the issue, again, you know, VALIC said we are going to set the fee at zero to 5%. That turned VALIC into a fiduciary, especially because it controlled the assets, and it decided to pay its own bill. It decided to pay its own bill. That's an act of planned administration. Well, lawyers all the time put money into trust funds from which they're going to take part of it as their contingency fee. That's right, and they act as a fiduciary. They certainly can't take more than they are allowed to. Okay, and taking money out of that, I don't know. Okay. I am just struggling with the notion that fiduciaries charging money is a bad thing because they do that all the time. Absolutely, and they are fiduciaries, and they charge money. That's absolutely correct, Your Honor. And the question, but right now what the district court held was that VALIC was not even a fiduciary. That's the only issue that we're addressing. And I agree, there might be a situation where this is not at all a fiduciary breach, but that's an issue for another day. The breach issue comes later. Okay, so just returning to the circularity problem with respect to Count 1 real quick, there is no circularity problem because what we have is a single transaction that has multiple consequences, which is different. So, for example, a service contract can turn, at the same time, turn a person into a promisor and subject him to liability under the contract. And a legal service contract can turn the person into both a promisor and a criminal and render the transaction prohibited. There's no circularity argument present. And this is, you know, and as the Ninth Circuit said, you know, the literal reading of 406A is, in fact, the best reading, and that's confirmed by the 2021 amendments to 408, which expressly state that initial service contracts for welfare plans must include disclosure requirements to be reasonable. The only way that that provision makes sense is if initial contracts are subject to Section 406. That's the only way it makes sense. And, you know, for this court to hold, as the district court held, that we're going to have one set of rules, party and interest will mean one thing for service providers of welfare plans because of the 2021 amendments, and something different for service providers of pension plans, you will be giving party and interest to that single term two divergent definitions under ERISA. That's not found anywhere in the statute. Counsel, I want to make sure I understand your position with respect to the Department of Labor's amicus brief. Yes. So they're obviously supporting you. The Labor Department says, quote, this is from page 8 of their brief, all service contracts are prohibited transactions. Yes. All. Yes. So everything is prohibited, and the only way to get to form the contract is to shoehorn it into one of the 1108 exceptions. Well, shoehorn into the very, very broad exception that it be reasonable. Here's my question. Why in the world would Congress write the statute the way they did? Why wouldn't you just say all transactions are prohibited unless they're exempted, and then either here's a list of exemptions in 1108, or here's the secretary of the Department of Labor can come up with regulatory exemptions. We've seen these in different circumstances in different ways. What's so odd about this argument is that 1106 has content to it. 1108 has content to it. It doesn't just say all service contracts are prohibited or all contracts are prohibited unless they are exempted. A much simpler way to write the statute that you would ask us to hold. There is a much simpler way to have written ERISA, absolutely. What I can say is if you look at 406 AC, what it says, the furnishing of goods, services, or facilities by a party in interest, and that tracked the IRS definition. But 1106 does nothing under your interpretation, I guess is what I'm saying. Section 1106 is not doing any work in your statutory interpretation because everything is prohibited. So like all of the — I'm sitting here looking at the text of it. We don't need any of this. We could just reduce this all down to there shall be no transactions unless they meet the 1108 exceptions. Let's be very clear. So, for example, if Valek, who is in the business of providing services, sold pencils to the Markhams, there's no prohibited transaction there because it's not providing services to Markham. It's furnishing goods. But if you and I were writing 1106, the way we would write it is no service contracts unless they satisfy 1108. That's correct, Your Honor. Yes. But that's obviously not what 1106 says. Yes. But you also have to harmonize everything else, Your Honor. I mean, it's a difficult statute. And you're asking why would 1108 talk about an exemption for the establishment of the plan, and I'm going to have to end here, Your Honor, because I want to reserve, if it didn't apply to initial contracts. It's a difficult statute. I'll reserve the rest of my time. Thank you. Okay. I think we can all agree on that. So we will now hear from David McDowell. May it please the Court. Good morning, Your Honors. David McDowell for the Valek defendants. With respect to the fiduciary issue, what the Markhams are essentially trying to do is to take a fiduciary decision they made to enter into the plan with Valek, a non-fiduciary, and voiced a fiduciary obligation onto Valek to get the plan out of the buyer's remorse that they're now experiencing. Nothing in the case law supports their interpretation of what constitutes a fiduciary act in this regard. There are four key facts that drive the fiduciary decision. Number one, the fee was fully disclosed to the Markhams. Number two, the Markhams entered the plan knowing full well that the fee was there. Number three, it was the Markhams, not Valek, that determined, or the plan participant, that got to determine whether or not there was a surrender under the contract. And number four, there is nothing about the fee itself that allowed Valek to inflate it through the provision of its services. Valek charged the very fee that is set forth in the document itself. These kind of fees have been found by court after court not to constitute the collection of that fee, not to constitute an act of fiduciary duty. There is nothing about this fee that comes close to the kind of fees that other courts have had problems with. For example, as this court wrote in Equitable Life, in that case the administrator was paid a percentage of the claims that he processed as an administrator of the plan. The allegation was that he paid claims to people who were ineligible. The court had no problem looking at that and saying, look, administrator, you're controlling one of the very aspects of what constitutes a fee, what constitutes your compensation. That's not what we have here. What plaintiffs basically say is that because Valek reserved supposedly the discretion to waive the fee, that somehow the waiver itself or the decision to waive or not to waive was a fiduciary decision, and that's simply incorrect. Valek's decision in this circumstance at the outset, Valek didn't waive the fee. Valek imposed the very fee that is reflected in the contract. The Markhams point this court to a number of cases in which supposedly the court said, well, as long as the fee is fixed or as long as there is no unilateral discretion to change it, that in that circumstance the collection of the fee is not a fiduciary act, but maybe in other circumstances it would be. Has Valek waived the fee before? I don't know if Valek has waived the fee before. He has not? I don't know. I don't know the answer to the question whether or not Valek has waived the fee. Would it change the case if they had? I don't think so. Not in this circumstance, Your Honor. So what if there was a service provider that routinely waived it and didn't routinely waive it in any set amount, sometimes 0 percent, sometimes 1 percent, sometimes 2 percent, sometimes 2.5 percent? Yeah. I think in that circumstance, as long as it was under the cap that was set by the agreement, it is not a fiduciary action. What if it said that Valek can waive the fee and its fiduciary responsibility to the plan? Valek can waive the fee and its fiduciary responsibility? Take the exact contract language here, but just add the word fiduciary and some relevant modifier text. I don't think Valek can independently waive its fiduciary responsibilities if it has one. In this circumstance, it didn't have one. Sorry. I'm saying it's exercising of the waiver provision, so it has the power to waive the fee, but it just uses the word fiduciary in empowering Valek to waive. That would obviously make Valek a fiduciary, right? If Valek declared itself a fiduciary? In the contract, yeah. In the contract, I suppose it could. So that's one relevant distinction. What if it doesn't have that, but instead the waiver provision is zero to 100 percent? Your Honor, I'm sorry. I'm sorry. The audio is not great. What if the waiver provision said zero to 100 percent and the unreviewable discretion of Valek? Yeah. If the contract said that, that becomes a real problem for the Markham plan, but I don't think it becomes a problem for Valek. You're still not exercising any kind of relevant fiduciary discretion? You're not. I mean, it would be hard to sign to that because that would mean you get no money back. But I guess what I'm wondering about, isn't it sort of always true that if you owe me money I can say, never mind, I forgive you, you don't have to pay it? I mean, isn't that sort of always true? It is, Your Honor. That even if you didn't say it, you don't have to take, if you're the lawyer and you're supposed to be charging, what is it these days, $2,000 an hour? In my day it was lower than that. But whatever the fee was and you say, well, okay, I realize that you don't have the money for that so I'll cut it down, is that a violation of their fiduciary obligation to say, well, you owe me $100,000, but I know you don't have it so just pay me $50,000? First of all, Your Honor, I need to hang out with the lawyers you hang out with if they're charging $2,000 an hour. But, no, it's not a fiduciary act. Any fee that is, unless it's set by a statute, any fee can be waived or reduced or altered in some way. And I think what's key here is that some of the cases that Markhams point this court to, to look at, Santameno v. John Hancock, Santameno v. Transamerica Life, the McCaffrey v. Principal case, all of those cases involved plans or contracts that had provisions in them that allowed the provider to change the fees. And in none of those cases did the circuit courts find that the provider was acting as a fiduciary in charging the fees. To the contrary. The key is not to go above. The key is not. If they charge 10%, we would have a problem. Regardless of whether it's a fiduciary, that would be a problem. Absolutely, Your Honor. You go below. So if you're doing a contingency fee as a fiduciary, 40%, and you decide instead to collect 30% just because the amount that was awarded was not that much, that's not a breach of fiduciary duty, is it? It is not a breach of fiduciary duty, Your Honor. That would be news to me. I agree. I agree. And what a number of courts have found, including the Fifth Circuit and the, I can't pronounce it, the Tibblier case, was that just because there is discretion isn't what's important. What's important is whether or not the discretion is exercised. Here, there's no real question that VALIC did not exercise any discretion. It applied the fee that is set forth in the contract, and as a consequence, it is not a fiduciary under ERISA. With respect to the party and interest argument, Your Honor, so we have to begin that analysis by looking at Supreme Court precedent, right? Justice Thomas wrote in the Harris Trust case that Congress defined a party and interest to encompass those entities that a fiduciary might be inclined to favor at the expense of planned fiduciaries. We define who is encompassed by a rule to distinguish them from those who are not encompassed by the rules, and the Department of Labor and the Markhams say everybody is encompassed by the rule, which means that Justice Thomas was essentially recognizing a distinction that doesn't exist. But what he was doing was amplifying his reasoning from Lockheed. In Lockheed, he looked at 406A1A, B, C, E. He walked through them. He specifically referenced the language in C regarding the furnishing of services, and after he went through those, he wrote, These are commercial bargains that present a special risk of planned underfunding because they are struck with planned insiders, presumably not at arm's length. That is what 1106 is trying to prevent, deals that are struck with planned insiders, somebody that already has a relationship with a plan, deals that were not subject to the rigors of the marketplace. And we know that not only from Supreme Court precedent, but by simply looking at the statute itself. 1102 defines a party in interest as somebody providing services to such plan. Judge Lake at the district court level did a very good job of walking through why that language is clear and unambiguous. The party has to be providing services to the plan in order to be a party in interest. Anybody, a service provider that reaches an arm's length agreement with the plan that had no previous relationship or influence over the plan is not a party in interest under 1102. That is where the analysis can stop. But even if we move to 1106, we see that 1106 supports that very interpretation. As Judge Oldham noted, 1106A1C specifically prohibits the provision of services between a plan and a party in interest. If the all-or-nothing approach that the Department of Labor and the Markhams advocate have any meaning, why in the world do you include the language between the plan and the party in interest? You would simply stop after you prohibit the provision of services by a plan to anybody else. The language makes no sense if we accept the wording or the arguments advocated by the Markhams. And 1108 doesn't change that. It mentioned the establishment of the plan. How can the establishment of the plan mean anything if you give party in interest the definition that Valak supports? Without support, the Markhams seem to argue that establishment is something that happens in a nanosecond, in one point in time. But 1102 and the case law that interprets the establishment of the plan make clear that that's not the case, that there is no one act that constitutes the establishment of the plan. And it just makes sense, right? Like you have to have a plan document. You have to have something that funds plan benefits. You have to have somebody that administers the plan. You have to have a system for claims. You have to have a method to get people to become plan participants and to allow people to exit the plan. All of those things can be done by different service providers. And if that's the case, and we know that 1108B2 talks about services in the plural, then the statute can be read entirely consistently with the interpretation that Valak urges the court to accept and that the district court accepted. The 1106, 1108, 1102 party in interest, it can all be read closely together. What plaintiffs ask this court to do, both with respect to the fiduciary obligation and with respect to the party in interest, is to adopt an extreme rule that would have a real impact on service providers' willingness to engage with the plan in the first place. So given that 1102, 1106, and 1108 are clear, we don't need to look outside the statutory text. We don't need to look at the Dictionary Act. We don't need to look at Department of Labor regulations. We don't need to look at other acts that were passed or recent amendments to other provisions of ERISA because the language before the court today is absolutely clear. Whether we're talking about the fiduciary duty or the party in interest, Your Honors, the district court correctly found that when Valak charged the surrender fee, imposed the surrender fee that is clearly set forth in the contract between Valak and Markham, it wasn't acting as a party in interest. And the existence of that contract by entering into that contract with Markham didn't turn Valak into a party in interest, and Valak's imposition of the surrender fee was not a separate transaction that independently made Valak a party in interest. How much money are we talking about here? I think it's about $20,000, Your Honor, a little bit more than that. That's not much. It is not much. If the court has no further questions for me, I'll sit down. Okay. Thank you. All right, we'll hear the rebuttal. Very quickly, Your Honor. If the initial contract with a service provider is not a prohibited transaction, then all you are going to have is indefinite length contracts under ERISA because those are going to be the safest contracts to enter into because they won't be prohibited. What do you mean indefinite? What did you say, indefinite duration? An initial indefinite contract that you cannot get out of because that won't be prohibited. Why would the Markhams agree to an indefinite duration contract? They did agree to an indefinite. That is what they agreed to. And there's a notion that the purpose of ERISA is to protect the plan participants from the hapless fiduciary. And small business owners are not sophisticated entities. And so you have here a situation where the Markhams entered into an indefinite length contract that ended up taking 5% of all its employees' retirement savings when they tried to get out of it. And under Valak's argument, its indefinite length contracts are not prohibited, so there's nothing the fiduciary can do about it and there's nothing the plan participants can do about it with respect to Markham anyways. You can go after the tiny dental shop. That's fine. But don't go after Markham. Not Markham's problem. And that's what you're going to have. That's what you're going to drive the business towards, the ERISA business towards, and that is not what ERISA had in mind. ERISA was intended to stop long-term, disadvantageous, unreasonable contracts. Then why didn't it say you can't have a contract that's longer than X years? Because it tried to address it through the 1108 exemption. You can have any kind of service contract as long as it's reasonable. We're going to let the Department of Labor decide what's reasonable. And the Department of Labor said you can't have a long-term contract if you're going to impose a termination penalty. It has to be reasonable. That's why they put it in there. So I think that's an important point, that what Valak is arguing is that you should bless indefinite length contracts as long as they're initial and that the 2021 amendment to 1108 has no meaning as applied to initial contracts. With respect to the waiver argument, Your Honor, I want to point out that, first, we allege that Valak weighs for some and not for others. We allege that Valak has a whole process in place. Within this 5%, it was across the board. It wasn't like they said, well, we're only going to take it out of this and not out of that. Well, it has a process in place where anyone can request a waiver. And they invited the Markhams to request a waiver. We allege that- It was across the board. It wasn't like- So you talked about a situation where somebody is trying to bribe by saying, well, waive it for you but not for them. But that was not happening within this. No, but Valak absolutely had the discretion to waive for some and not for others within the plan under the contract. That's what it says, that it can waive however it likes. But we also, and this goes into the Sixth Circuit case in Hylix, whereas if you can waive for some plans and not for others, that creates a fiduciary obligation, not necessarily a fiduciary breach, but a fiduciary obligation. And that's what we allege, is that they exercise discretion in setting the fee in every case. Every case out there where there is a delegated exercise of discretion to set the fee, the courts have found that the service provider is acting as a fiduciary. And that's on pages 27 and 28 of our brief, and I will sit down. Thank you. Okay. Thank you, both sides. This case is now under submission, and this concludes our oral arguments for today, and we will be back here tomorrow morning at 9 a.m.